1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   UNITED STATES of AMERICA,

4           -against-                    19 Cr. 324(NSR)
                                         Sentence
5
    PHILLIP HESTER,
6
                    Defendant.
7
    ------------------------------------x
8

9                                   United States Courthouse
                                    White Plains, New York
10
                                    November 19, 2020
11

12

13                  THE HONORABLE NELSON S. ROMAN,
                          United States District Judge
14

15

16

17  AUDREY STRAUSS
            Acting United States Attorney for
18          the Southern District of New York
    BY:  COURTNEY HEAVEY
19          Assistant United States Attorney

20

21  LAW OFFICES OF JESSE HOBERMAN-KELLY
                 Attorneys for Phillip Hester
22  BY:  JESSE I. HOBERMAN-KELLY

23

24

25

1          THE DEPUTY CLERK:  Docket number 19, 1-9, CR324,

2   United States of America versus Phillip Hester.

3          Would counsel please state their appearance for the

4   record, beginning with the government.

5          MS. HEAVEY:  Good morning, your Honor.  Courtney

6   Heavey for the government.

7          THE COURT:  Good morning.

8          MR. HOBERMAN-KELLY:  Good morning, your Honor.  Good

9   morning everyone.  Jesse Hoberman-Kelly for Mr. Hester.

10          THE COURT:  Good morning to you, counselor, and to

11   your client, Mr. Hester.

12          This is a proceeding in the matter of the United

13   States v. Phillip Hester, Docket 19CR324, and it's intended to

14   be the sentencing of the defendant.  I have reviewed the

15   revised presentence investigation report filed October 20,

16   2020, which was prepared in connection with today's sentencing

17   of Mr. Hester.  The government's submission dated November 12,

18   2020, and the defendant's submission dated November 9, 2020,

19   and November 11, 2020.

20          Has the government reviewed the presentence report?

21          MS. HEAVEY:  Yes, your Honor.

22          THE COURT:  And does the government have any

23   objections to the presentence report?

24          MS. HEAVEY:  No, your Honor.

25          THE COURT:  All right.  Mr. Kelly, have you had an

1  opportunity to review the presentence report?

2       MR. HOBERMAN-KELLY:  Yes, I have, your Honor.

3       THE COURT:  And have you had an opportunity to

4  discuss it with your client, Mr. Hester?

5       MR. HOBERMAN-KELLY:  Yes, I have.

6       THE COURT:  Do you have any objections that you'd

7  like to raise on behalf of your client with respect to the

8  report?

9       MR. HOBERMAN-KELLY:  Not at this time.

10       THE COURT:  Mr. Hester, I understand you've had an

11  opportunity to read and review the presentence report; is that

12  correct?

13       THE DEFENDANT:  Yes.

14       THE COURT:  And did you discuss it with your

15  attorney?

16       THE DEFENDANT:  Yes.

17       THE COURT:  All right.  The superseding indictment

18  charges that the defendant, Mr. Hester -- charges Mr. Hester

19  with one count of knowingly possessing a firearm while he

20  was -- while he had previously been convicted of a crime

21  punishable by imprisonment for a term exceeding one year in

22  violation of 18 U.S.C. Section 922(g)(1), and one count of

23  knowingly and corruptly altering, destroying, mutilating, and

24  concealing records, documents, and other objects with the

25  intent impair the objects' integrity and availability for use

1 in an official proceeding, and otherwise obstructing,

2 influencing, and impeding an official proceeding, in violation

3 of 18 U.S.C. Section 1512(c).

4        On August 11, 2020, the defendant pled -- rather

5 entered a guilty plea to Count One of the superseding

6 indictment.

7        Ms. Heavy, does the government have any comments or

8 motions for the Court's consideration before I impose a

9 sentence upon the defendant?

10        MS. HEAVEY:  No, your Honor.  I mean, we would

11 eventually move to dismiss the open count, Count Two.

12        THE COURT:  Okay, any comments that you'd like to

13 make with respect to sentencing?

14        MS. HEAVEY:  Briefly, your Honor.  The government, as

15 set forth in further detail in the Government's submission, the

16 government seeks a guideline sentence here.  Primarily, one of

17 the main factors here is the nature and circumstances of this

18 offense.  As detailed in the government's report, this offense

19 occurred because the defendant chose to confront a high school

20 student who had gotten into a dispute with his girlfriend

21 earlier.  The offense involved the defendant possessing a

22 loaded firearm after the conviction of a prior felony which

23 included, similarly included criminal possession of a weapon.

24 He also had a recent conviction for assault, and in fact the

25 defendant committed this offense while he was on probation in

1    connection with the criminal possession of a weapon.

2              The seriousness of the offense is further reflected

3    in the fact that he not only possessed the loaded firearm in

4    connection with a fight but that it all took place outside of a

5    housing complex where people were walking around in their

6    homes, and therefore there was a safety risk here.

7              There's also a need to promote respect for the law.

8    The defendant's conduct here has demonstrated a serious

9    disrespect for the law that necessitates a serious sentence of

10   imprisonment.

11             First is the fact, as I've previously mentioned, that

12   he committed this offense despite having previously committed

13   and been recently convicted of a similar firearms possession.

14   Indeed, being on probation at the time of the offense evidences

15   a clear disrespect for the law.

16             Second is the obstruction of justice that in

17   connection with this offense that is further troubling evidence

18   of his disregard for the law and the legal process.  Here, the

19   defendant twice instructed his girlfriend to delete

20   incriminating evidence on his iCloud account that was connected

21   to his phone so that the government would not be able to access

22   it, laughed about it, and ultimately his instructions led to

23   the phone being remotely wiped of its data by the time law

24   enforcement was able to access and unlock it.

25             Finally, there's a need for specific deterrence.  As

1  previously mentioned, the defendant's prior convictions clearly

2  did not sufficiently deter him from engaging in similar conduct

3  here, and there's also a need for general deterrence to send

4  the message that possessing a loaded firearm after a conviction

5  of a felony is a serious offense and becomes all the more

6  serious for defendants that choose to engage in obstruction of

7  justice thereafter.

8       THE COURT:  All right.  Thank you counsel.

9       Mr. Hoberman-Kelly, do you have any comments you'd

10  like to make on behalf of your client before I impose a

11  sentence?

12       MR. HOBERMAN-KELLY:  I do, very briefly, your Honor.

13  I also note that Mr. Hester has been working on drafting a

14  statement to make to your Honor.  He's been spending a lot of

15  time on it and working on making that, so would you prefer him

16  to go or me to go first?

17       THE COURT:  All right.  You go first, and then I'll

18  allow your client to have an opportunity to address the Court.

19       MR. HOBERMAN-KELLY:  Thank you very much, your Honor.

20       Mr. Hester has learned from his mistakes.  Over the

21  last year, almost two, that I have had the privilege to know

22  Mr. Hester -- would you like me to rise, your Honor?

23       THE COURT:  No, no.

24       MR. HOBERMAN-KELLY:  Sorry, I'm unclear on the COVID

25  protocol.  Over two last two years that I've had the privilege

1    to know Mr. Hester, I've observed substantial growth in his

2    ability to take responsibility for his situation and to see the

3    possibility of a positive future for himself.

4          The custody situation has given Mr. Hester no

5    opportunity to take advantage of classes and programs which

6    could further help him on his journey to becoming a fuller,

7    more responsible adult.  If the Court requires further

8    in-custody time, it is respectfully requested Mr. Hester be

9    sent to a facility with substantial educational opportunities

10   as Mr. Hester is anxious to resume his attempts to build a

11   career and become a productive member of his community.

12         The pandemic has made the past nine months extremely

13   difficult for all who are incarcerated, and certainly

14   Mr. Hester is no exception.  It is respectfully requested that

15   the extremely limited, no family visits, harsh conditions, the

16   pandemic has required be taken into consideration when

17   determining Mr. Hester's sentence.

18         Mr. Hester's family and community needs him.  As the

19   many letters of support show, Mr. Hester is a vital member of

20   his community supporting this large, diverse family and helping

21   whenever he can be of service.

22         Finally, no matter the outcome here today, this will

23   be Mr. Hester's last go-round with the criminal justice system.

24   He was quite young when he began to get into trouble.  He is

25   still young but maturing quickly, a maturity that is allowing

1  him to look back at his past mistakes, take full responsibility

2  for his bad decisions, and learn from them so as not to make

3  them again in the future.  Personally observing this growth and

4  his desperate desire to become a productive family man in his

5  community, I have seen a young man who has learned the required

6  lessons from this and other past bad decisions and will have

7  the fortitude to make good, law-abiding decisions in the

8  future.

9          As outlined in our sentencing memo, it is

10  respectfully requested that Mr. Hester be sentenced to 20

11  months, close to time served, with a period of supervised

12  release to follow his release from custody.

13          As I'm sure we all are aware, the pandemic appears to

14  be ramping up once again, and the harsh and limiting

15  conditions, no family visits, no recreational time, no

16  educational or supportive programming, the lack of proper

17  medical care, will continue for many more months to come.

18          If the Court has any questions regarding defense's

19  memo, I'd be happy to delve into any of the specific concerns

20  the Court may have.

21          Thank you very much for your consideration.

22          THE COURT:  Thank you, counselor.  I don't have any

23  questions for you.

24          Mr. Hester, is there anything that you'd like to say

25  on your own behalf before the Court imposes a sentence upon

1    you?

2            THE DEFENDANT:  Yes.  Your Honor, I've never had to

3    write something down to speak on my own behalf, so I'm not sure

4    where to start.  I don't want to feed some sob stroy in hopes

5    of you giving me a break.  I much rather tell you that I know I

6    did something wrong and that's why I'm in this situation now.

7            Even though I did my wrongs that led me to this

8    point, in that moment I felt as if I was right.  In the moment

9    I got shot, I was very upset, angry, and I wasn't thinking

10   right.  So instead of calling an ambulance, I reacted off

11   impulse and called someone I thought was a friend and got a

12   gun.

13           Being in jail these past 19 months, I was up many

14   nights playing the same situation in my head, but I had many

15   different outcomes to it, and some were negative for a while,

16   but I'm not going to lie, but I really started to think as well

17   as mature.  I realize I shouldn't have called someone for a

18   weapon, and I shouldn't have been in a place or a situation

19   where I would need one.

20           Looking back, I could have easily died.  Realizing

21   that has me viewing life and everything in a different

22   perspective.  I saw the judge to get arraigned on this case on

23   my birthday just turning 20 years old the day before I got

24   shot, and now I'm sitting in court with a bullet in my leg all

25   because of an argument and bad decisions I make.

1      I'm 21 going to 22 now.  Believe it or not, I matured

2  and learned a lot not just from sitting in jail but from all my

3  life experiences.  I've also learned from others.  My dad used

4  to tell me every action causes a reaction, which in return

5  causes consequences, whether that be negative or positive.

6      Since being in jail, a lot's been going on with my

7  family and me personally.  Two of my oldest sisters had a baby

8  I haven't met and one is pregnant again.  Some of my family has

9  passed as well.  I missed out on my long time girlfriend's

10  graduation.  Also my parents are getting older and need help

11  because they can't do everything they used to.  To some people

12  that might seem normal, but to me it weighs on my mental a lot,

13  and I get frustrated over simple things like not being able to

14  help my mom do her floors.  She raised me when she didn't have

15  to and was always there for me when I needed her.  So why can't

16  I be there for her and those who was there for me?  Any mistake

17  I make, I'm getting older, I can't keep doing the adolescent

18  things I was doing.  It's taken from my freedom as well as my

19  future.  It's time I grew up and start preparing for my future

20  so one day I could have my own family.  Since COVID-19, the

21  whole world been affected in many ways.

22      I'm asking you to help me.  I don't want to get lost

23  in this world or in prison.  I'm still young and have my whole

24  life ahead of me.  I don't need jail, I need guidance and help.

25  If I walk out today, the first thing I would do is fill out job

1   applications as well as see if my probation officer can help me

2   get into an apprenticeship program so I could learn a trade.  I

3   would save up money and try to get back where I left with my

4   handyman business I was trying to start.

5          I know I could be successful.  All I had to do was

6   cut off the bad people I had in my life and look to my family

7   for support, change the places I used to hang out at and

8   minimize the idle time by doing things productive.

9          If I could get home confinement or some type of

10  supervision instead of going to prison, not only will I make

11  you a believer as well as proud, but more importantly my family

12  and everyone who ever doubted I was going to be something, and

13  I'm determined to do that no matter the outcome of this

14  setback, no matter what I get sentenced, I have to own up to my

15  mistakes and humbly take this sentence you find fit for the

16  crime I committed.

17         Thank you.

18         THE COURT:  You're 21 years old, Mr. Hester?

19         THE DEFENDANT:  Yes.

20         THE COURT:  This is your second felony conviction.

21         THE DEFENDANT:  Yes.

22         THE COURT:  The trajectory that you're heading in if

23  you continue this path is going to put you in a place where

24  you're going to wind up spending the majority of your adult

25  life in prison.

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  There are far too many young men,

4   especially young men of color, appearing before me who are

5   spending more time in prison than they're spending out of

6   prison, and that's the direction that you're heading right now.

7          It's a pretty sad commentary.  No?  You agree with

8   that?

9          THE DEFENDANT:  I agree with you, your Honor.

10         THE COURT:  Twenty-one years old you already have two

11  felony convictions.  The third one and you're going to be

12  spending a long, long time in prison.  And I can assure you

13  that no judge is going to give you a break on your third felony

14  conviction.  They're going to send you away for the maximum

15  amount of time.

16         What I find most troubling is that both felony

17  convictions involve guns.  That's a scary thought that someone

18  young like you would be out there with a loaded gun and would

19  not hesitate to fire that gun.  My understanding of the facts

20  is that the only reason why you didn't fire the gun -- or you

21  did attempt to fire the gun and it jammed.  That's scary.  It's

22  scary for people that live in the communities that have

23  children.

24         You spoke about having your own family, right?

25         THE DEFENDANT:  Yes, sir.

THE COURT: Imagine living in a community where there are people, young people in possession of firearms willing to fire that firearm in public or in an isolated area. Imagine the danger that that creates for that family.

That's something you want for your family?

THE DEFENDANT: Not at all.

THE COURT: You have to change the way you're living. You have to change how you handle conflict. If you don't change that, I can assure you that you're likely to wind up appearing before me again having committed a much more serious crime. And as a result, myself as a judge, would have no recourse but to sentence you to a very, very long prison term. I don't think that's what you want. I really don't. And if you don't change right now, that's where you're heading.

The sad part is that if that's the direction you're going, not only are you going to suffer because you're going to spend a lot of time in prison, but your family is going to suffer. You talked about wanting to help your mother or wanting to help your family. If you're in prison, believe it or not, you're not in a position to help. And whether you know it or not, your family is doing time with you.

Now I've never spent time in prison. I've visited a number of correctional facilities. They're dark. They're dreary. It's sad just to visit them. So I can only imagine how difficult it is to do time in prison. But it seems like if

1   you don't change course, it seems like you're going to be

2   spending more time in prison.  That's a sad commentary.

3          Twenty-one years old, two felony convictions.  All

4   right.  And the next time that you commit, I can assure you,

5   you will be spending more time in prison than you will have

6   spent outside of prison.  And the question is whether or not

7   you just want to become another statistic or whether or not you

8   want to change course.

9          I know that your dad is there, your girlfriend's

10  there, but the effort can't just come from them.  It's not

11  enough that they say, hey, what you're doing is wrong, you've

12  got to stay out of trouble.  It's got to come from you.  You've

13  got to be the one that wants to change.  All right?

14          THE DEFENDANT:  Yes.

15          THE COURT:  You need to change course, otherwise

16  you're just going to become another statistic, and I can assure

17  you you're going to be like those statistics we wind up sending

18  young men to prison where they're just warehoused.  And the

19  question is whether or not you want to be warehoused like all

20  the others that are in prison right now.

21          From what I understand, prison has its own culture,

22  right?  You've got to eat when they tell you, you've got to

23  wake up when they tell you, you've got to eat when they tell

24  you.  Whatever it is that they serve you, you've got to eat.

25  You have no independence.  You've got to have eyes in the back

1   of your head.  The guy on the left and the guy on the right you

2   don't know if they're going to go off on you or something

3   stupid or someone else that's behind you.  That's the

4   environment you put yourself in, and that's the environment

5   that you're going to live with if you continue down this

6   course.  You need to make a change, but it's got to come first

7   and foremost from you.

8           In accordance with the decision by the Supreme Court

9   in *United States versus Booker*, while the United States

10  sentencing guidelines are not mandatory, this Court nonetheless

11  must consulted those guidelines and take them into account when

12  sentencing.  Therefore, this Court has considered the findings

13  of fact stated in the presentence report, as well as the

14  guidelines analysis and recommendations contained therein.  The

15  Court has weighed this information along with the factors

16  listed in 18 U.S.C. Section 3553(a) in coming to its final

17  sentencing decision.

18          The Court adopts the factual recitation in the

19  presentence report.  The presentence investigation report

20  includes a computation that Mr. Hester's offense level amounts

21  to 19 and his criminal history falls into Category III.  The

22  guideline sentence for that offense level and criminal history

23  category listed in the presentence report is 37 to 46 months

24  imprisonment followed by three -- I'm sorry, followed by one to

25  three years of supervised release.  In addition, the applicable

1    fine range is 10,000 to $100,000.

2            Mr. Hester, you've been found guilty of one count of

3    being a felon in possession of a firearm in violation 18 U.S.C.

4    Section 922(g)(1).

5            The Probation Office has recommended that the Court

6    impose a sentence of 37 months of incarceration followed by

7    three years of supervised release.  The Probation Office noted

8    that for this offense you must pay a special assessment of $100

9    in accordance with 18 U.S.C. Section 3013.  The Probation

10   Office has recommended no fine be imposed and restitution and

11   forfeiture not be imposed in this matter.

12           Subsection (a)(1) of 18 U.S.C. Section 3553 requires

13   that the Court take into consideration the nature and the

14   circumstances of the offense and the history and

15   characteristics of the defendant.  Subsection (a)(2) of 18

16   U.S.C. Section 3553 requires that the Court consider the need

17   for the sentence to promote certain objectives of the criminal

18   justice system, namely; punishment, specific and general

19   deterrence and rehabilitation.  The Court must also consider

20   the kinds of sentences available, the sentencing guidelines,

21   the pertinent policy statements, the need to avoid unwarranted

22   sentencing disparities, and the need to provide restitution to

23   victims.

24           I have considered the arguments made by both sides

25   and the information provided by the parties, including

1   Mr. Hester's acceptance of responsibility for his actions and

2   the nature and circumstances of this crime, his prior criminal

3   history, his history and characteristics, and the seriousness

4   of the crime.

5           Taking into account the nature and circumstances of

6   the offense and the history and characteristics of the

7   defendant, the Court finds that a sentence of 26 months to be

8   followed by a term of three years of supervised release is

9   reasonable and appropriate in that such terms are sufficient

10  but not greater than necessary to promote the proper objectives

11  of sentencing.

12          In addition, the defendant is ordered to pay to the

13  United States a mandatory $100, which shall be due immediately.

14          Finally, based on the presentence report's

15  recommendation, I will not impose a fine.

16          Mr. Hester, upon your release from custody, you shall

17  be placed on supervised release for a period of three years.

18  During your term of supervised release, you must comply with

19  the standard conditions of supervision, as well as the

20  following mandatory conditions of supervision:

21          One, you must not commit another federal, state, or

22  local crime;

23          Two, you must not unlawfully possess a controlled

24  substance;

25          Three, you must cooperate in the collection of DNA as

1    directed by the probation officer;

2            Four, you must refrain from any unlawful use of a

3    controlled substance.  You must submit to one drug test within

4    15 days of release from imprisonment, and at least two periodic

5    drug tests thereafter, as determined by the Court; and

6            Five, you must comply with the standard conditions

7    that have been adopted by this Court as well as with any other

8    conditions.

9            Mr. Hester, you must also obey the following special

10   conditions while on supervised release:

11           One, you must participate in an outpatient treatment

12   program approved by the United States Probation Office which

13   program may include testing to determine whether you

14   reverted -- you have reverted to using drugs or alcohol.  You

15   must contribute to the cost of services rendered based on your

16   ability to pay and availability of third-party payment.  The

17   Court authorizes the release of available drug treatment

18   evaluations and reports, including the presentence

19   investigation report to the substance abuse treatment provider;

20           Two, you must participate in an outpatient, mental

21   health treatment program approved by the United States

22   Probation Office.  You must continue to take any prescribed

23   medication unless otherwise instructed by the healthcare

24   provider.  You must contribute to the cost of services rendered

25   based on your ability to pay and availability of third-party

1    payment.  The Court authorizes the release of available

2    psychological and psychiatric evaluations and reports,

3    including the presentence investigation report, to the

4    healthcare provider; and

5          Three, you must submit your person, and any property,

6    residence, vehicle, papers, computer, and any other electronic

7    communications and storage devices and effects to search by the

8    United States Probation Officer, and if needed with the

9    assistance of any law enforcement officer.  The search is to be

10   conducted when there is reasonable suspicion concerning a

11   violation of the conditions of your supervision or unlawful

12   conduct by you, the supervisee.  Failure to submit to search

13   may be grounds for revocation of release.  You shall warn any

14   of the occupants that the premises may be subject to searches

15   pursuant to this condition.  Any search shall be conducted at a

16   reasonable time and in a reasonable manner.

17         Mr. Hester, do you understand each and every one of

18   these conditions?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Upon your release from custody, you must

21   report to the nearest Probation Office within 72 hours.  The

22   Court recommends you be supervised by the district of

23   residence.

24         The sentence as stated is imposed.

25         Mr. Hester, you have the right to appeal your

1     sentence.  Any notice of appeal must be filed within 14 days

2     after the entry of judgment.  So if you wish to appeal, you

3     must advise your attorney to prepare and file a notice of

4     appeal immediately.  If you are unable to pay the cost of an

5     appeal, you have the right to apply for leave to appeal *in*

6     *forma pauperis*, meaning as a poor person.  If you make such a

7     request, the Clerk of the Court must immediately prepare and

8     file a notice services appeal on your behalf.

9              Do you understand your right to appeal to the extent

10    that it may exist?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Are there any remaining counts or

13    underlying information that need to be dismissed or addressed

14    at this time?

15              MS. HEAVEY:  The government would move to dismiss

16    Count Two.

17              THE COURT:  Okay.  I take it there's no opposition to

18    the application.  It's granted.

19              Counselor, do you want the Court to make any

20    recommendation with respect to any placement that may occur by

21    the Bureau of Prisons?

22              MR. HOBERMAN-KELLY:  I would request he be

23    transferred to federal custody, if it's possible someplace

24    close for his family and someplace that has services he can

25    take advantage services.

1          THE COURT:  Okay.  What county is his family

2    residing?

3          MR. HOBERMAN-KELLY:  He resides in Peekskill, your

4    Honor, which is in Westchester.

5          THE COURT:  Okay.  Someplace close to Peekskill so

6    his family can visit.

7          What type services, mental health and treatment?

8          MR. HOBERMAN-KELLY:  Career-oriented services.  Trade

9    services I think would be most appropriate for him.

10          THE COURT:  I'll make those recommendations.

11          MR. HOBERMAN-KELLY:  Thank you, your Honor.

12          THE COURT:  Anything further?

13          MS. HEAVEY:  Nothing from the government, your Honor.

14    Thank you.

15          MR. HOBERMAN-KELLY:  Nothing from defense, your

16    Honor.

17          THE COURT:  Mr. Hester, it's my sincere hope you

18    don't have to ever appear before me again under these

19    circumstances.

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  You need to know your next appearance

22    before a judge on a criminal matter may wind up sending you to

23    prison for a very, very long time.  You don't want that.  Make

24    the best services the situation, and I hope that you change

25    course.  Good luck.

1                THE DEFENDANT:  Thank you.

2                THE DEPUTY CLERK:  Court in recess.

3                (Proceedings concluded)

4    CERTIFICATE:  I hereby certify that the foregoing is a true and
     accurate transcript, to the best of my skill and ability, from
5    my stenographic notes of this proceeding.
                     _____
6    Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25